**2023 WI APP 38**
# COURT OF APPEALS OF WISCONSIN
## PUBLISHED OPINION

Case No.:       2022AP1127

Complete Title of Case:

**FRIENDS OF BLUE MOUND STATE PARK,**

**PETITIONER-APPELLANT,**

**V.**

**WISCONSIN DEPARTMENT OF NATURAL RESOURCES,**

**RESPONDENT-RESPONDENT.**

---

| | |
|---|---|
| Opinion Filed: | June 27, 2023 |
| Submitted on Briefs: | March 17, 2023 |
| Oral Argument: | |

---

| | |
|---|---|
| JUDGES: | Brash, C.J., Dugan and White, JJ. |
| Concurred: | |
| Dissented: | |

---

| | |
|---|---|
| Appellant ATTORNEYS: | On behalf of the petitioner-appellant, the cause was submitted on the briefs of *Brian H. Potts, David R. Zoppo,* and *Olivia S. Radics* of *Perkins Coie LLP* in Madison. |
| Respondent ATTORNEYS: | On behalf of the respondent-respondent, the cause was submitted on the brief of *Joshua L. Kaul* and *Gabe Johnson-Karp* of the *Wisconsin Department of Justice* in Madison. |

# COURT OF APPEALS
# DECISION
# DATED AND FILED

## June 27, 2023

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

**Appeal No.    2022AP1127**

**STATE OF WISCONSIN**

Cir. Ct. No.  2021CV114

**IN COURT OF APPEALS**

---

FRIENDS OF BLUE MOUND STATE PARK,

PETITIONER-APPELLANT,

V.

WISCONSIN DEPARTMENT OF NATURAL RESOURCES,

RESPONDENT-RESPONDENT.

---

APPEAL from an order of the circuit court for Iowa County: MARGARET MARY KOEHLER, Judge.  *Reversed and remanded for further proceedings*.

Before Brash, C.J., Dugan and White, JJ.

¶1    DUGAN, J.  The Friends of Blue Mound State Park ("the Friends") appeal the order of the circuit court dismissing two petitions for judicial review of actions by the Wisconsin Department of Natural Resources ("the Department").

The circuit court determined that the Friends lacked capacity and standing to file the petitions for review. Because we determine that the Friends has both capacity and standing, we reverse the circuit court's order and remand for proceedings consistent with this opinion.

## BACKGROUND

¶2      The Friends is a small nonprofit organization dedicated to supporting and assisting the Department in providing recreational, interpretive, scientific, historical, educational, and related visitor services to enhance Blue Mound State Park. The Friends is incorporated as a non-stock corporation under Chapter 181 of the Wisconsin Statutes. The Friends' articles of incorporation state that the corporation's purpose is to "conduct any lawful activities of charitable and educational nature to support, assist, and promote the Wisconsin Department of Natural Resources, including interpretive, scientific, historical, educational, and related visitor services at Blue Mound State Park." The parties agree that the Friends has entered into an agreement with the Department that authorizes the organization to be recognized as a "Friends group" and to be eligible for certain benefits in accordance with Department regulations.[1]

¶3      On May 26, 2021, the Department adopted a revised master plan for Blue Mound State Park that authorized the creation of a new snowmobile trail. On June 25, 2021, the Friends filed a petition for judicial review in Dane County Circuit Court Case No. 2021CV114, seeking to challenge the Department's adoption of the revised master plan. Specifically, the Friends alleged that the Department failed to conduct an adequate environmental analysis of the impact of the new snowmobile

---

[1] We note that although both parties agree that this written agreement exists, the agreement itself is not part of the record.

trail. On August 13, 2021, the Friends filed a second petition for judicial review in Dane County Circuit Court Case No. 2021CV1955, challenging the Department's decision to deny the Friends' petition for a contested case hearing.[2]

¶4 The Department moved to dismiss the Friends' petitions, arguing that the Friends lacked capacity and standing to seek judicial review of the Department's actions.[3] The Dane County Circuit Court subsequently consolidated the Friends' two petitions into a single case and further determined that the proper venue was Iowa County. The Iowa County Circuit Court granted the Department's motions to dismiss both petitions, concluding that the Friends lacked capacity and standing. However, the circuit court granted the Friends' motion to stay the portions of the revised master plan that authorized construction of the new snowmobile trail and continued the stay, pending this appeal.

## STANDARD OF REVIEW

¶5 "Whether a party has standing is a question of law that we review independently." *Friends of the Black River Forest v. Kohler Co.*, 2022 WI 52, ¶10, 402 Wis. 2d 587, 977 N.W.2d 342 (citation omitted). "In reviewing a motion to dismiss a petition seeking judicial review of an agency decision, we determine 'whether a petition on its face states facts sufficient to show that the petitioner named therein is aggrieved … by the decision sought to be reviewed.'" *Id.* (internal

---

[2] In addition to the Department, the Friends' petitions for judicial review also named the Wisconsin Natural Resources Board ("the Board") as a respondent. The circuit court concluded that the Board was not a proper party to the second petition. The Friends do not challenge this aspect of the circuit court's decision.

[3] The Department's motion to dismiss the petition in Case No. 2021CV1955 does not appear to be part of the record. We note that the Department cites to a letter filed with the circuit court on July 20, 2021, but that is just a letter to the judge about the status of the Friends' request for a contested case hearing. However, the docket for Dane County Circuit Court Case No. 2021CV1955 shows a motion to dismiss filed on September 2, 2021.

quotation marks omitted; quoting ***Wisconsin's Env't Decade, Inc. v. Pub. Serv. Comm'n of Wis. (WED I)***, 69 Wis. 2d 1, 8, 230 N.W.2d 243 (1975)). "On review of a motion to dismiss for lack of standing, the court must 'take all facts alleged by [the petitioner] to be true in determining whether he has standing to bring his claim.'" ***Id.***, ¶11 (quoting ***McConkey v. Van Hollen***, 2010 WI 57, ¶14 n.5, 326 Wis. 2d 1, 783 N.W.2d 855).

> In evaluating a ch. 227 motion to dismiss, we apply "the rules that the allegations of the petition are assumed to be true; that the allegations are entitled to a liberal construction in favor of the petitioner; and that this court is not concerned with the ability of the petitioner to prove the facts alleged at trial."

***Id.*** (quoting ***WED I***, 69 Wis. 2d 1 at 8-9).

¶6      The parties have not identified the standard of review for the question of whether the Friends has capacity to sue, nor have we found any published Wisconsin cases addressing this issue directly. The Friends cite ***Mayo v. Boyd***, 2014 WI App 37, ¶8, 353 Wis. 2d 162, 844 N.W.2d 652, for the proposition that our review of the order granting the Department's motion to dismiss is *de novo*. The Department points to ***Data Key Partners v. Permira Advisers, LLC***, 2014 WI 86, ¶17, 356 Wis. 2d 665, 849 N.W.2d 693, arguing that "[t]his [c]ourt independently reviews whether a pleading can survive a motion to dismiss, benefitting from the analysis of the circuit court." We assume, without deciding, that the standard of review proposed by the Department is correct.

## DISCUSSION

### I.    The Friends has capacity to sue under WIS. STAT. § 181.0302(1).

¶7      "[N]ot every entity has the capacity to sue and be sued." *Mayhugh v. State*, 2015 WI 77, ¶40, 364 Wis. 2d 208, 867 N.W.2d 754 (citing WIS. STAT. §§ 802.03, 802.06).  "It is an accepted principle of law that an action cannot be maintained by one who has no capacity to sue." *Joint Sch. Dist. No. 1, City of Wis. Rapids v. Wisconsin Rapids Educ. Ass'n*, 70 Wis. 2d 292, 302, 234 N.W.2d 289 (1975).

¶8      The Friends argues that it has capacity to sue under WIS. STAT. § 181.0302 (2021-22),[4] which sets forth the general powers of a Chapter 181 corporation.  This statute provides that "[u]nless its articles of incorporation provide otherwise, a corporation … has the same powers as an individual to do all things necessary or convenient to carry out its affairs." Sec. 181.0302.  As relevant to this appeal, a corporation's default powers include the power to "[s]ue and be sued, complain and defend in its corporate name." Sec. 181.0302(1).  The Friends argues that any waiver of its statutory right to sue must be express, and that the Department has not identified any "clear and specific renunciation" of the Friends' right to sue. *See Mulvaney v. Tri State Truck & Auto Body, Inc.*, 70 Wis. 2d 760, 767-68, 235 N.W.2d 460 (1975) (explaining that "[o]nly a clear and specific renunciation of the statutory right" would be sufficient to demonstrate a waiver of the right to sue to enforce warranty of title).

---

[4] All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.

¶9    The Department agrees that the default powers in WIS. STAT. § 181.0302 are relevant to this appeal.  However, the Department focuses on the phrase, "[u]nless its articles of incorporation provide otherwise," and argues that the Friends' articles of incorporation "limit[ ] [its] activities to those which support, assist, and promote" the Department.  The Department further points to the statutory and regulatory scheme governing official friends groups, contending that both the legislature and the Department have limited the Friends' capacity to challenge the Department's revised master plan for Blue Mound State Park.

¶10    The circuit court agreed with the Department, concluding that the Friends' articles of incorporation "legally restrict Friends from acting in ways that do not support the [Department]'s management of the Park."  The court determined that the language requiring the Friends to assist and support the Department's properties was "in effect … a clear waiver of the statutory right to sue."  Likewise, the court found it significant that the Department's administrative rules require the Friends "to support, assist, and promote the mission and activities of the Department's properties as approved by the Department."  Finally, the court noted that the Friends group enjoyed "certain privileges and priorities over other unofficial groups" by virtue of having entered a written agreement with the Department. Although Wisconsin courts have permitted other friends groups to sue the Department, the court concluded that the "Friends are materially distinguishable from other groups due to its Articles of Incorporation [and] its status as an official friends group."

¶11    We disagree with the circuit court's determination that the Friends lacks capacity to sue.  Both parties agree that the Friends is a Chapter 181 corporation and further agree that, as a general matter, a Chapter 181 corporation has the capacity to sue and be sued.  Although the Department makes several

arguments for why the Friends has waived its statutory capacity to sue under WIS. STAT. § 181.0302(1), we conclude that none of these arguments support the conclusion that the Friends has clearly and specifically renounced its right to sue the Department. *See **Mulvaney***, 70 Wis. 2d at 768. Nor has the Department pointed to any Wisconsin authority that would suggest that something less than a clear and specific renunciation would be sufficient to overcome the Friends' statutory capacity to sue and be sued pursuant to § 181.0302(1). We address each of the Department's arguments below.

### a. The legislature has not prohibited friends groups from suing the Department.

¶12 To support its argument that the Friends lacks capacity to sue, the Department points to several statutory provisions that govern the role of friends groups in Wisconsin state parks. Specifically, the Department points to provisions that:

- define the types of entities that may qualify as a friends group (WIS. STAT. § 27.016(1)(b));

- authorize the Department to establish a grant program for qualifying friends groups (WIS. STAT. § 27.016(2)(a));

- establish the criteria by which friends groups may qualify for grant eligibility (WIS. STAT. § 27.016(2)(b), (3));

- make friends groups eligible for various state grants or contracts (WIS. STAT. § 23.098 (grants for property development on Department-owned properties); § 23.0912(1g) (authorizing the Department to "contract with nonprofit conservation organizations and other 3rd parties to perform land management, maintenance, and improvement activities on Department land"); § 27.016 (governing a grants program for state parks and forests));

7

- direct the Department to establish a system to offer grants "to eligible friends groups before … eligible nonprofit conservation groups" (WIS. STAT. § 23.098(4)(am));

- require the Department to "promulgate rules to establish criteria to be used in determining which friends groups and which activities related to the maintenance or operation of state parks [or other properties] are eligible for these grants" (WIS. STAT. § 27.016(3));

- require a qualifying friends group to establish "an endowment fund for the benefit of a state park" or other property (WIS. STAT. § 27.016(2)(b)); and

- require a qualifying friends group to "enter[ ] into a written agreement with the Department as required by the Department by rule" (WIS. STAT. § 27.016(2)(b)).

¶13    The Department refers to qualifying friends groups that are eligible for priority consideration for grants as "officially recognized friends groups" and argues that the cited statutory provisions "establish that an officially recognized friends group exists *only* by the authority granted in state law." This argument is patently incorrect. The Friends exists as a corporate entity pursuant to Chapter 181 of the Wisconsin Statutes. Indeed, one of the statutory provisions identified by the Department provides that an entity can only qualify to become eligible for specified grants, if that group first exists as a "non-stock, nonprofit corporation" that is tax-exempt. WIS. STAT. § 27.016(1)(b). We conclude that having followed the legislature's prescribed path to recognition as a qualifying, grant-eligible friends group, the Friends has the same default powers as any other Chapter 181 corporation, including the power to "sue and be sued, complain and defend in its corporate name." WIS. STAT. § 181.0302(1).

¶14    Moreover, none of the statutory provisions cited by the Department expressly limit the capacity of friends groups to sue and be sued as set forth in WIS.

STAT. § 181.0302(1). To support its argument that the legislature has implicitly altered the Friends' statutory capacity to sue and be sued, the Department points to two "instructive" decisions from the New York Court of Appeals holding that legislatively-created entities lacked capacity to sue. *See Community Bd. 7 of Borough of Manhattan v. Schaffer*, 84 N.Y.2d 148 (N.Y. 1994); *Excess Line Ass'n of N.Y. (ELANY) v. Waldorf & Assocs.*, 30 N.Y.3d 119 (N.Y. 2017). However, neither of these decisions are persuasive on the question of whether the Friends has capacity to sue.

¶15    The issue presented in *ELANY* was whether "a legislatively created advisory association under the supervision of the Department of Financial Services (DFS) … has capacity to sue its members." *ELANY*, 30 N.Y.3d at 121. The New York Court of Appeals concluded that "a right to sue cannot be derived from [ELANY's] enabling legislation or some other concrete statutory predicate." *Id.* at 125 (internal quotation marks omitted; citation omitted). Here, the Department contends that "Wisconsin law governing friends groups is … closely analogous to New York's laws governing ELANY." We disagree. In the present case, the legislature has directed that any qualifying friends group must be incorporated as a non-stock, nonprofit, tax-exempt corporation. *See* WIS. STAT. § 27.016(1)(b). In turn, WIS. STAT. § 181.0302(1) serves as the "concrete statutory predicate" that gives such corporations the capacity to sue. *See ELANY*, 30 N.Y.3d at 125.

¶16    Further, the Department's reliance on *Community Board 7* is similarly inapposite. That case involved a legislatively created community board that sought to challenge the city's denial of a public records request. *Id.*, 84 N.Y.2d at 152. The New York Court of Appeals concluded that the community board lacked capacity to sue in light of "the terms and history of its own enabling legislation." *Id.* at 157. In reaching this conclusion, however, the court

distinguished "[g]overnmental entities created by legislative enactment" from corporations that "are creatures of statute and, as such, require statutory authority to sue and be sued." *Id.* at 155-56. The court explained that a governmental entity's "right to sue, if it exists at all, must be derived from the relevant enabling legislation or some other concrete statutory predicate." *Id.* at 156. In the present case, there is no need to examine any statutes other than Chapter 181, which serves as the concrete statutory predicate that gives the Friends the default power to sue and be sued. *See* WIS. STAT. § 181.0302(1).

¶17 Finally, the Department points to a series of Wisconsin decisions holding that municipal corporations and quasi-governmental entities are not permitted to sue the state or other government agencies. *See **Brown Cnty. v. DHSS***, 103 Wis. 2d 37, 43, 307 N.W.2d 247 (1981) ("Because of its status as an arm of the state, a county cannot be heard to challenge or question the wisdom of its creator"); ***City of Marshfield v. Towns of Cameron, etc.***, 24 Wis. 2d 56, 63, 127 N.W.2d 809 (1964) ("Municipal corporations, being creatures of the state, are not permitted to censor or supervise the activities of their creator"); *id.* ("Although towns are denominated 'quasi-municipal corporations,' they are likewise 'political subdivisions and governmental agencies of the state.'") (citation omitted); ***Columbia Cnty. v. Board of Trs. of Wis. Ret. Fund***, 17 Wis. 2d 310, 317, 116 N.W.2d 142 (1962) ("A county as a quasi municipal corporation and as an arm of the state has no right to question the constitutionality of the acts of its superior and creator or of another arm or governmental agency of the state."). We conclude that these decisions do not affect our analysis because the Friends is a Chapter 181 corporation and not a municipal corporation or quasi-governmental entity.

### b.     The Department's administrative regulations do not prohibit friends groups from suing the Department.

¶18     To further support its argument that the Friends lacks capacity to sue, the Department points to the administrative rules regarding qualifying friends groups that the Department has promulgated pursuant to WIS. STAT. § 27.016(2)(b) and (3).  *See generally* WIS. ADMIN. CODE ch. NR 1.71 (May 2022).[5]  Specifically, the Department asks us to consider the effect of rules that:

- define a qualifying friends group as "a non-profit, non-stock, tax-exempt corporation organized to support, assist and promote the mission and activities of Department properties, facilities and programs and other activities as approved by the Department under the provisions of a written agreement with the Department" (WIS. ADMIN. CODE §§ NR 1.71(3)(b), (4)(b)1.);

- require a qualifying friends group to "be structured through articles of incorporation and by-laws to direct its mission and activities to the support of the property, group of properties, or other Department facilities and programs as approved by the Department" (WIS. ADMIN. CODE § NR 1.71(4)(b)1.);[6]

---

[5] All subsequent references to the Wisconsin Administrative Code are to the May 2022 version unless otherwise noted.

[6] The Department highlights the phrase, "as approved by the Department," suggesting that this phrase applies to the entirety of WIS. ADMIN. CODE § NR 1.71(4)(b)1.  The circuit court appears to have adopted this broad interpretation.  However, the Friends argues that the disjunctive "or" in this subdivision means that this phrase only modifies "other Department facilities and programs."  *See* ***United State v. Woods***, 571 U.S. 31, 45 (2013) (when "operative terms are connected by the conjunction 'or' … its ordinary use is almost always disjunctive"); ***Encino Motorcars, LLC v. Navarro***, __ U.S. __, 138 S. Ct. 1134, 1141 (2018) ("[w]here a sentence contains several antecedents and several consequents, courts should "read them distributively and apply the words to the subjects which, by context, they seem most properly to relate") (citation omitted).  We agree with the Friends that the Department is asking us to interpret the phrase "as approved by the Department" more broadly than its logical context permits.

11

- authorize the Department to work with a qualifying friends group "as the lead volunteer organization for a property, facility or program," making it eligible for "certain privileges, such as use of Department equipment and facilities" (WIS. ADMIN. CODE § NR 1.71(1));

- govern the distribution and administration of legislative grant programs (*see, e.g.*, WIS. ADMIN. CODE ch. NR 51; Sec. NR 50.21); and

- require qualifying friends groups to "[p]rovide an annual fiscal and program report" and "permit a fiscal audit by the Department upon request." (WIS. ADMIN. CODE § NR 1.71(4)(b)2.a., c.).[7]

¶19 As with the statutory provisions that the Department has cited, we see nothing in the administrative rules identified by the Department that limits the Friends' default capacity to sue and be sued under WIS. STAT. § 181.0302(1). To the contrary, the list of items that must be included in a written agreement contains several specific limits on what a friends group can and cannot do. *See* WIS. ADMIN. CODE § NR 1.71(4)(b)2.a.-i. For example, the written agreement between a qualifying friends group and the Department must "[p]rohibit Department employees from serving as officers and directors" and must provide that a friends group "[a]gree not to represent their employees and volunteers as Department employees." *See* § NR 1.71(4)(b)2.f., g. Importantly, missing from this long list of requirements is any language to suggest that qualifying friends groups are prohibited from filing suit against the Department.

¶20 In its opening brief, the Friends cites to *Sauk Prairie Conservation Alliance v. DNR*, Sauk County Circuit Court Case No. 2016CV642 (Dec. 8, 2016),

---

[7] The Department also contends that WIS. ADMIN. CODE §§ NR 1.71(3)(b) and (4)(b)1. "require the Friends to conduct its operations subject to [Department] supervision and approval." However, the text of the cited regulations does not support the Department's assertion. As noted above, the Department appears to be taking the phrase "as approved by the Department" out of context.

and ***Friends of Stower Seven Lakes Trail v. DNR***, Polk County Circuit Court Case No. 2021CV38 (Feb. 4, 2021), to support its argument that several other friends groups that were created to support Department properties have sued the Department. The Department argues that these cases are distinguishable because the Friends' designation as an official friends group with priority consideration for grants, alters its capacity to sue and be sued under WIS. STAT. § 181.0302(1).[8] However, the Department points to no statute, regulation, or other Wisconsin authority to support this proposition. We, therefore, see no basis for concluding that the Department's regulations affect the Friends' default power to sue and be sued under § 181.0302(1).

### c.   The Friends' articles of incorporation do not waive its right to sue the Department.

¶21    The Department further argues that the "plain terms" of the Friends' articles of incorporation have waived the Friends' statutory capacity to sue.[9] Specifically, the Department focuses on the language in the Friends' articles of incorporation, stating that the entity's purpose is to "conduct any lawful activities of charitable and educational nature to support, assist, and promote the Wisconsin

---

[8] We note that the cases cited by the Friends are not part of the record and they are not part of its appendix. However, the Department does not dispute that in those cases, the friends groups were permitted to sue the Department. Further, we note that the Friends cited ***Friends of Black River Forest v. DNR***, Nos. 2019AP299 and 2019AP534, unpublished slip op. (WI App Sept. 15, 2020), which is an unpublished **per curiam** decision. We remind counsel that the case may not be cited on appeal. *See* WIS. STAT. RULE 809.23(3).

[9] The Friends argues that the Department waived this argument because it raised it for the first time in its reply brief to the circuit court. In its opening brief in support of its motion to dismiss, the Department stated that "only two categories of information are relevant to the current motion: (1) information about the administrative rules and statutes governing official 'Friends groups' like the Friends here; and (2) information about the nature of the Friends' current challenge in the petition for judicial review." Because we conclude that the circuit court erred on the merits of this argument, we do not address whether the Department properly raised its argument that the Friends' articles of incorporation waived the Friends' default power to sue the Department under WIS. STAT. § 181.0302(1).

Department of Natural Resources, including interpretive, scientific, historical, educational, and related visitor services at Blue Mound State Park." According to the Department, this language means that the Friends has "elected not to exercise the full extent of the powers authorized by law." Instead, the Department asserts that the Friends has "self-limited the activities [it] may undertake in relation to" the Department.

¶22 We disagree that this language constitutes a clear and specific renunciation of the Friends' statutory capacity to sue the Department. *See Mulvaney*, 70 Wis. 2d at 768. Our conclusion is bolstered by the Department's acknowledgement that the Friends' articles of incorporation need not be construed as a complete waiver of the Friends' capacity to sue the Department. Indeed, if the Friends' articles completely waived the Friends' capacity to sue the Department, then the Friends would not even be able to sue the Department to enforce the terms of their agreement. The Department appears to recognize that such an interpretation would not make sense, and instead, asks this court to limit our analysis to the question of whether the Friends lacks capacity to bring this particular action. We conclude that the language in the Friends' articles does not support this distinction. If the Department is correct that the phrase "support, assist, and promote the Wisconsin Department of Natural Resources" has expressly limited the Friends' capacity to sue the Department for an inadequate review of environmental impacts at a specified property, we fail to see how the same language would, nonetheless, preserve the Friends' capacity to bring any other type of claim against the Department. We, therefore, decline to interpret this language as a partial waiver of the Friends' capacity to sue the Department under WIS. STAT. § 181.0302(1).

¶23 Thus, for the reasons stated above, we conclude that the Friends has capacity to sue the Department. We next address whether the Friends has standing to seek judicial review of the Department's decisions under Chapter 227.

**II.      The Friends has standing to seek judicial review of the Department's decision under Chapter 227.**

¶24 "In the context of judicial review of an administrative decision, standing is governed by WIS. STAT. §§ 227.52 and 227.53." *Friends of the Black River Forest*, 402 Wis. 2d 587, ¶20. Pursuant to § 227.52, a petitioner may seek judicial review of "[a]dministrative decisions which adversely affect the substantial interests of any person." Likewise, § 227.53(1) provides that "any person aggrieved by a decision specified in s. 227.52 shall be entitled to judicial review of the decision as provided in this chapter." These statutory provisions "require a petitioner to 'show a direct effect on his legally protected interests.'" *Friends of the Black River Forest*, 402 Wis. 2d 587, ¶20 (quoting *Fox v. Wisconsin DHSS*, 112 Wis. 2d 514, 524, 334 N.W.2d 532 (1983)).

¶25 Wisconsin uses a two-step test to determine whether a particular petitioner has standing under these statutes. *See id.*, ¶18. Wisconsin courts "typically … ask first 'whether the decision of the agency directly causes injury to the interest of the petitioner' and second, 'whether the interest asserted is recognized by law.'" *Id.* (quoting *WED I*, 69 Wis. 2d at 10). Wisconsin courts "construe the law of standing liberally and even an injury to a trifling interest may suffice." *Id.*, ¶19 (citations omitted).

¶26 To satisfy the first part of the test for standing, a petitioner must "allege[ ] injuries that are a direct result of the agency action." *Id.*, ¶21 (quoting *WED I*, 69 Wis. 2d at 13). "[A]llegations of injury to aesthetic, conservational,

15

recreational, health and safety interests will confer standing so long as the injury is caused by a change in the physical environment." *Milwaukee Brewers Baseball Club v. DHSS*, 130 Wis. 2d 56, 65, 387 N.W.2d 245 (1986). We conclude that the allegations contained in the Friends' petitions for judicial review are sufficient to satisfy this part of the standing test. *See WED I*, 69 Wis. 2d at 14. "The question of whether the injury alleged will result from the agency action in fact is a question to be determined on the merits, not on a motion to dismiss for lack of standing." *Id.*

¶27 In the Friends' petitions for judicial review, the Friends allege direct injuries to the organization and its members, including the negative impact of the new snowmobile trail on their preservation work and ecological restoration efforts. We also note that for the purposes of this appeal, the Department does not dispute that the Friends has satisfied the first prong of the test for standing.

¶28 The second prong of Wisconsin's test for standing requires that the injury alleged by the Friends be "to an interest which the law recognizes or seeks to regulate or protect." *Friends of the Black River Forest*, 402 Wis. 2d 587, ¶28 (quoting *Waste Mgmt. of Wis., Inc.*, 144 Wis. 2d at 505). "[T]his inquiry centers on a textually-driven analysis of the language of the specific statute cited by the petitioner as the source of its claim to determine whether that statute 'recognizes or seeks to regulate or protect' the interest advanced by the petitioner." *Friends of the Black River Forest*, 402 Wis. 2d 587, ¶28 (quoting *Waste Mgmt. of Wis., Inc.*, 144 Wis. 2d at 505).

¶29 The circuit court focused on the Friends' claim under the Wisconsin Environmental Protection Act (WEPA), WIS. STAT. § 1.11, concluding that the Friends "[is] not within the zone of interest under … WEPA." In particular, the court found that the Friends' "unique relationship" with the Department meant that

16

the Friends had failed to establish that it was within the zone of interests protected by WEPA.[10]

¶30    At the outset, we note that the Wisconsin Supreme Court has discarded the zone of interests label as an "anachronistic misnomer." **Friends of the Black River Forest**, 402 Wis. 2d 587, ¶30.  Nonetheless, discarding this label "leaves the test's substance intact." **Id.**  The substance of the test asks whether the injury is "to an interest which the law recognizes or seeks to regulate or protect." **Id.** (quoting **Waste Mgmt. of Wis., Inc.**, 144 Wis. 2d at 505).

¶31    In applying this test, the circuit court concluded that the Friends' unique relationship with the Department as an officially recognized friends group prevented the Friends from having standing under WEPA.  We see no basis for this limitation on standing.  The Wisconsin Supreme Court has "consistently recognized broad environmental interests under WEPA for standing purposes." **Friends of the Black River Forest**, 402 Wis. 2d 587, ¶26 n.10.  As relevant here, WEPA "recognize[s] an interest sufficient to give a person standing to question compliance with its conditions where it is alleged that the agency's action will harm the environment in the area where the person resides." **Id.**, ¶24 (quoting **WED I**, 69 Wis. 2d at 19).  Thus, for example, WEPA has conferred standing on the corporate owner of a farm to challenge an agency action that caused injury to "its legally protected conservation interest." **Friends of the Black River Forest**, 402 Wis. 2d 587, ¶24 n.8 (quoting **Applegate-Bader Farm, LLC v. DOR**, 2021 WI 26, ¶17 n.7, 396 Wis. 2d 69, 955 N.W.2d 793).  Similarly, the Wisconsin Supreme Court has

---

[10] In its opening brief, the Friends points to several other statutory grounds for standing, including various property management laws and administrative regulations.  The Department contends that these other statutes and regulations do not confer standing because they are not intended to protect the interests of private parties.  In its reply brief, the Friends only argues standing under WEPA.

determined that "increased traffic congestion is an effect on the physical environment cognizable under WEPA." *Milwaukee Brewers Baseball Club*, 130 Wis. 2d at 70.

¶32 As with the petitioners in *Applegate-Bader Farm* and *Milwaukee Brewers Baseball Club*, the Friends' petition alleges harm to its conservation and ecological interests due to the new snowmobile trail. These interests are within the "broad environmental interests" protected by WEPA. *Friends of the Black River Forest*, 402 Wis. 2d 587, ¶26 n.10.

¶33 Despite the broad standing conferred by WEPA, the circuit court, nonetheless, determined that the Friends lacked a legally protected interest under *Columbia County*. In *Columbia County*, the Wisconsin Supreme Court held that "[a] county as a quasi municipal corporation and as an arm of the state has no right to question the constitutionality of the acts of its superior and creator or of another arm or governmental agency of the state." *Id*., 17 Wis. 2d at 317. Here, the circuit court concluded that the Friends' "unique affiliation with the [Department] puts Friends in the same position as the" county in *Columbia County*. However, as explained above, the Friends is incorporated under Chapter 181, and we see no basis for concluding that the statutes and regulations that make qualifying friends groups eligible for grants, somehow turned the Friends into a quasi-municipal corporation or an arm of the state. Thus, we conclude that *Columbia County* does not limit the otherwise broad standing conferred by WEPA.

¶34 In this appeal, the Department argues that our standing inquiry should be focused narrowly on whether WEPA "protect[s], recognize[s], or regulate[s] *this* petitioner's *specific interests*." In arguing that WEPA does not protect the Friends' specific interests, the Department relies on two Wisconsin decisions: *Friends of*

*Black River Forest*, 402 Wis. 2d 587, and *Chenequa Land Conservancy, Inc. v. Village of Hartland*, 2004 WI App 144, 275 Wis. 2d 533, 685 N.W.2d 573. Neither of these decisions involves a petitioner who claimed standing under WEPA. Indeed, in *Friends of Black River Forest*, the Wisconsin Supreme Court identified WEPA as an example of a statute that conferred standing for claims asserting an injury to the petitioner's conservation or environmental interests. *See id.*, 402 Wis. 2d 587, ¶24 & n.8. But the Court explained that cases that found standing under WEPA were distinguishable because the petitioner in *Friends of the Black River Forest* "ha[d] not asserted the Department made a negative-EIS decision nor ha[d] [the petitioner] brought any claim under WEPA." *Id.*, ¶24 n.8. In contrast, in this case the Friends *has* asserted that the Department made a negative-EIS[11] decision, and the Friends *has* brought its claim under WEPA. Thus, *Friends of the Black River Forest* fully supports the conclusion that the Friends has standing in this case.

¶35 Our decision in *Chenequa Land Conservancy, Inc.* is similarly not helpful to the Department. In that case, the petitioner sought review of a Department of Transportation decision conveying state property to the Village of Hartland. *Id.*, 275 Wis. 2d 533, ¶1. The petitioner argued that the property transfer violated WIS. STAT. § 84.09(5) (2001-02), as well as a Department manual. *Id.* We explained that for the petitioner to have standing,

> The injury asserted must be such that it gives the plaintiff a personal stake in the outcome of the controversy.… The injury need not be pecuniary; it may, for example, be an injury to interests that are aesthetic, conservational, or recreational. *See* [*WED I*], 69 Wis. 2d at 10. The injury need not be of great magnitude…; and it need not have already occurred, but instead may be one that will allegedly

---

[11] EIS is an abbreviation for environmental impact statement. *See generally* WIS. STAT. § 1.11.

19

result from a sequence of events set in motion by the agency's conduct. [*Id.*], 69 Wis. 2d at 14.

*Chenequa Land Conservancy*, 275 Wis. 2d 533, ¶17.

¶36    In *Chenequa Land Conservancy*, this court concluded that the petitioner had established an injury, based on its allegation that it would have arranged for the property to be purchased and preserved if the Department had followed the correct procedures for surplus land. *Id.*, ¶¶18-19.  But we further concluded that the petitioner had not satisfied the second part of the test for standing—namely, a legally protectable interest—because "[t]here is nothing in WIS. STAT. § 84.09(5) [(2001-02)] that indicates this section was intended to establish procedures to protect persons or entities interested in purchasing state property." *Id.*, ¶¶20-22.

¶37    In contrast to the petition in *Chenequa Land Conservancy*, the Friends is bringing its claim under WEPA, WIS. STAT. § 1.11, which is intended to establish procedures to protect persons or entities asserting environmental interests. *Friends of the Black River Forest*, 402 Wis. 2d at 587, ¶26 n.10.  Thus, *Chenequa Land Conservancy* is readily distinguishable.

¶38    For the reasons stated above, we conclude that the Friends has standing to challenge the Department's revised master plan that authorized the creation of a new snowmobile trail within Blue Mound State Park.  Thus, we reverse the circuit court's order dismissing the Friends' petition challenging the Department's revised master plan.

¶39    We next turn to the question of whether the Friends has standing to seek judicial review of the Department's denial of its contested case petition under

WIS. STAT. § 227.42. This statute gives the Friends a right to a hearing, if the Friends satisfies four criteria:

> (a) A substantial interest of the person is injured in fact or threatened with injury by agency action or inaction;
>
> (b) There is no evidence of legislative intent that the interest is not to be protected;
>
> (c) The injury to the person requesting a hearing is different in kind or degree from injury to the general public caused by the agency action or inaction; and
>
> (d) There is a dispute of material fact.

WIS. STAT. § 227.42(1). The Department contends that the question of whether these factors are satisfied is "necessarily intertwined with standing to bring the underlying claim."

¶40 In dismissing the Friends' petition for judicial review of the Department's denial of a hearing, the circuit court relied on its determination that the Friends lacked standing. Other than the argument that the Friends lack a legally protected interest, which we have already rejected, the Department has not identified any other basis for affirming the circuit court's dismissal of the Friends' petition under WIS. STAT. § 227.42. Instead, the Department contends that "standing for a contested case hearing is derivative of standing for any underlying claim." Because we have concluded that the Friends has standing to bring their underlying claim, we also conclude that the Friends has standing to petition for a contested case hearing. We, therefore, reverse the circuit court's dismissal of the Friends' petition for judicial review of the Department's decision denying the Friends' petition for a contested case hearing.

21

**CONCLUSION**

¶41 We conclude that the Friends has capacity to sue the Department under WIS. STAT. § 181.0302(1) and has not waived the right to sue through its articles of incorporation or by becoming a qualifying, grant-eligible friends group pursuant to WIS. STAT. § 27.016 and WIS. ADMIN. CODE § NR 1.71. We also conclude that the Friends has alleged sufficient facts in its petition to satisfy the standing requirements of WIS. STAT. § 227.52 and WIS. STAT. § 227.53. We, therefore, reverse the dismissal of the Friends' petitions and remand for proceedings consistent with this opinion.

*By the Court.*—Order reversed and cause remanded for further proceedings.